## STATE *vs.* CLARENCE J. LONGLEY, Appellant.

### Franklin.　　Opinion January 31, 1921.

*Complaint under Public Laws of 1917, Chap. 219, Sec. 64, as amended by Public*
*Laws of 1919, Chap. 180, alleging the offense of having a loaded shotgun in an*
*automobile upon the highways and fields in Dead River Plantation.*
*On demurrer held that the language of the complaint set*
*out the offense with sufficent certainty and precision.*
*Sec. 84, Chap. 219, Public Laws of 1917, as*
*amended by Sec. 33, Chap. 196, Public*
*Laws of 1919, is not repugnant to*
*Section 6 of the Declaration*
*of Rights.*

A complaint under Public Laws of 1917, Chap. 219, Sec. 64, as amended by Public Laws of 1919, Chap. 180, alleging that A. "did, at Dead River Plantation, Somerset County, Maine, on the 16th day of October, A. D. 1919, have a loaded shotgun in his automobile upon the highways and fields in said Dead River Plantation against the peace of the State and contrary to the form of the statute in such case made and provided," must be held, upon general demurrer, to charge the offense with sufficient certainty and precision.

Sec. 84 of Chap. 219 of the Public Laws of 1917, as amended by Sec. 33 of Chap. 196 of the Public Laws of 1919, conferring jurisdiction upon trial justices and other courts, of offenses under the inland fish and game laws committed in an adjoining county, is not repugnant to Section 6 of the Declaration of Rights, guaranteeing to the accused in criminal prosecutions, the right;

"To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity."

On exceptions by respondent. The respondent was arrested on a complaint charging a violation of Chapter 180 of the Public Laws of 1919, which provides as follows: "No person shall have a rifle or shotgun, either loaded or with a cartridge in the magazine thereof, in or on any motor vehicle while the same is upon any highway or in the fields or forests." The respondent waived examination in the trial justice court, found guilty, and appealed to the Supreme Judicial Court, and at the first term filed a general demurrer, with leave to plead over, alleging that the language of the complaint was vague and indefinite and did not sufficiently set forth the offense charged, and further alleging that the statute conferring jurisdiction upon trial

justices and other courts, of offenses under the inland fish and game laws committed in an adjoining county, is repugnant to Section 6 of the Declaration of Rights, guaranteeing to the accused in criminal prosecutions, the right "To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity." The demurrer, after joinder, was overruled by the presiding Justice, and respondent excepted. Exceptions overruled.

Case stated in the opinion.

*J. Blaine Morrison,* for State.

*H. S. & E. L. Wing,* for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

MORRILL, J. The respondent was arraigned at Kingfield in Franklin County, before a trial justice of that county, upon a complaint charging him with a violation of the Public Laws of 1917, Chap. 219, Sec. 64, as amended by Public Laws of 1919, Chap. 180; the offense is charged as committed at Dead River Plantation in Somerset County; upon appeal to this court held in Franklin County, he filed a general demurrer to the complaint; the demurrer was overruled and the case is here upon exceptions.

In support of the demurrer the respondent contends:

"First. The charge in the complaint is vague and indefinite, is not formally, fully and precisely set forth as required by law so that the accused may know and be prepared to meet the exact charge against him.

Second. The statute conferring jurisdiction upon trial justices and all other courts, of offenses under the Fish and Game Laws, committed in an adjoining county, is void as against public policy and is repugnant to the provisions of the Constitution of Maine."

Under the first contention the respondent argues that the complaint is vague and indefinite because (a) it charges two offenses in a single count; and (b) does not sufficiently specify the place in Dead River Plantation where the offense was committed.

We think that the complaint is sufficient; it charges that the respondent "did, at Dead River Plantation, Somerset County, Maine, on the 16th day of October, A. D. 1919, have a loaded shotgun in his automobile upon the highways and fields in said Dead River Planta-

tion against the peace of the State" etc. This complaint charges but a single offense; if it appeared in evidence that upon the day named the respondent rode, with a loaded shotgun in his automobile, along certain highways and, leaving the highway, across two or more fields in Dead River Plantation, he would be guilty of but one offense, a single act at one time and place. *State* v. *Burgess,* 40 Maine, 592. *State* v. *Cates,* 99 Maine, 68. *Woodford* v. *People,* 62 N. Y., 117, 20 Am., R. 464. *State* v. *Warren,* 77 Md., 121, 39 Am. St. R., 401. *Byrne* v. *The State,* 12 Wis., 577, 585, *526. 1 Wharton's Crim. Proc. 10th Ed., Sec. 292. And the complaint may be sustained if the evidence shows that he rode over a certain highway, and not over any fields. The offense would be complete. "It is a general rule, that runs through the whole criminal law, that it is sufficient to prove so much of the indictment as shows that the defendant has committed a substantive crime therein specified." *State* v. *Burgess,* supra, at Page 595. Roscoe's Crim. Ev. 3d. Am. Ed., by Sharswood, Page 98. 1 Bishop's New Criminal Procedure; Section 436.

Nor is the complaint defective because the highway or field in which the offense was committed is not specified. The offense is charged as committed in Dead River Plantation in Somerset County; that is sufficient, the locality of the highway or field not being an essential element in constituting the offense against the statute, as was the case in *State* v. *Turnbull,* 78 Maine, 392. The respondent relies upon *State* v. *Lashus,* 79 Maine, 541; but the complaint in that case did not allege an offense committed within the jurisdiction of the court. It is familiar law that the object of the rule requiring the charge to be particularly, certainly and technically set forth, is three fold: To apprise the defendant of the precise nature of the charge made against him: To enable the court to determine whether the facts constitute an offense and to render the proper judgment thereon: That the judgment may be a bar to any future prosecution for the same offense.

The allegations of this complaint meet this test; the respondent cannot be in doubt as to the offense with which he is charged. And the court, according to the modern practice, in cases of general allegations, will take care that the defendant shall not be surprised, but that in proper cases he shall seasonably be furnished with such specifications and particular statements, as may be necessary to enable him to prepare for his trial, and to meet all the proof which may be brought against him. *Com.* v. *Pray,* 13 Pick., 359, 363.

Under the second contention in support of the demurrer the defendant challenges the authority of the Legislature to enact Sec. 84 of Chap. 219 of the Public Laws of 1917, as amended by Sec. 33 of Chap. 196 of the Public Laws of 1919, conferring jurisdiction upon trial justices and other courts, of offenses under the inland fish and game laws committed in an adjoining county. This provision originated in R. S., 1883, Chap. 30, Sec. 16 as amended by Public Laws of 1891, Chap. 95, Sec. 8, and was enacted in its present form in Public Laws of 1899, Chap. 42, Sec. 51.

The authority of the Legislature to enact this provision cannot be denied unless it is restrained by some constitutional provision or declaration, intended as a limitation upon its authority. By the common law the grand jury was sworn to inquire only for the body of the county, and therefore they could not regularly inquire of a fact done out of that county for which they were sworn, unless particularly enabled by an act of parliament. Blackstone mentions many acts of parliament by which offenses committed in one county might be inquired of and tried in another county. 4 Black. Com. 303; and in this State such statutes, other than the one question, are found, R. S., Chap. 133, Secs. 2, 4, 5; some are of early enactment. Laws of 1821. Chap. 59, Secs. 40, 41.

It is contended that such limitation upon the authority of the Legislature is found in Section 6 of the Declaration of Rights:

"In all criminal prosecutions, the accused shall have a right . . .

To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity."

The argument is that the word "vicinity" is equivalent to the word "county," and "was intended to limit the trial of offenses to the county in which the crime was committed."

An examination of "American Charters, Constitutions and Organic Laws," compiled and edited by Francis Newton Thorpe under Act of Congress of June 30, 1906 and published by the U. S. Government; discloses that in some twenty-five states the constitutional guaranty of an impartial trial requires a jury of the county or district—in Louisiana, of the parish—where the offense was committed; in the Constitutions of Kentucky (1792, 1799, 1850, 1890), Michigan (1835), Pennsylvania (1790, 1838, 1873), and Virginia (1776, 1830, 1850, 1864, 1870, 1902) the word "vicinage" is used, "a jury of the vicinage;" and it is an interesting fact that this word "vicinage" is found

in the earlier Constitutions of Illinois (1818), Louisiana (1812, 1845, 1852), and Missouri (1820, 1865), and was later changed to the other form of expression. The word "vicinage" does not mean "county;" it means "neighborhood." Taylor Law Glossary. Bouvier; in the New International Dictionary it is given as the synonym of "vicinity." In *State* v. *Lowe*, 21 W. Va., 783; 45 Am. Rep., 570, 573, in *Ex parte McNeeley*, 36 W. Va., 84, 32 Am. St. Rep. 830, 837, and in the recent case from Pennsylvania, *Com.* v. *Collins*, 110 Atl., 738, the distinction in the use of the words "county" and "vicinage" is very clearly pointed out.

The word "vicinity" is a word of popular and common meaning, and in using it the framers of the constitution of 1820 undoubtedly had reference to its common, ordinary meaning, that which is near, not remote. The constitution of Massachusetts of 1780 contained the following declaration: "In criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty and property of the citizen." Under this provision in the judicial legislation affecting the District of Maine many instances occur in which criminal trials were not confined to the county in which the offense was committed. In 1782, by Chapter 57 of the laws of that year, the place for holding the term of the Supreme Judicial Court for the Counties of Cumberland and Lincoln was fixed at Falmouth in the County of Cumberland. Twenty years before, by the Act of April 14, 1761, it had been provided that the Superior Court of judicature, court of assize and general jail delivery to be held at Falmouth shall have the same jurisdiction, power and authority for the trial of all actions, civil and criminal, the cause whereof shall arise within the body of the County of Lincoln, as the said Superior Court would have if the cause of such actions and such matters and things had arisen within the body of the County of Cumberland. Thus the practice prior to the constitution of 1780 was continued under the constitutional declaration above quoted.

By the Act of June 10, 1791, it was provided that the Supreme Judicial Court to be held in the County of Lincoln should be holden for the Counties of Lincoln, Hancock and Washington, and have the same original jurisdiction of all matters criminal, civil and mixed, arisen or which shall arise in either of the said Counties, as if the same actions, matters and things had arisen within the body of said County of Lincoln.

By the Act. of February 27, 1807, after the County of Oxford was established, jurisdiction was conferred upon the Supreme Judicial Court holden in the County of Cumberland for the trial of all matters civil and criminal and mixed arising within the County of Oxford, as if the same actions, matters and things had arisen in the County of Cumberland; in 1809, June 20, the court sitting at Augusta in the County of Kennebec was given jurisdiction of all actions, civil and criminal, arising in the County of Somerset, as if they had arisen in the County of Kennebec; and in 1816, June 17, the court held at Castine, in the County of Hancock, for the Counties of Hancock and Washington, was given jurisdiction over all matters, civil and criminal arising within the County of Penobscot, as though said County of Penobscot had not been established. These provisions were continued for a time after the separation, and the adoption of the Constitution of Maine. Laws of 1821, Chap. 54, Sec. 5.

Further, it appears by the records now in the custody of this court in the County of Hancock that at a term held at Castine, for the Counties of Hancock and Washington, on the third Tuesday of June, 1811, by Justices Sewall, Thatcher and Parker, one Ebenezer Ball was tried and convicted of a murder committed in the Plantation of Robinstown, in the County of Washington, and was sentenced to death.

Therefore, in view of this history of legislative proceedings in Massachusetts prior to the separation, we think that the framers of the Constitution of Maine did not use the word "vicinity" as meaning "county"; they were undoubtedly familiar with this Legislation and the practice of the courts thereunder; and if they had intended to establish a more restricted and exactly defined procedure, we think that they would have made the intention clear by the use of some other word or phrase.

While no usage for any course of years, nor any number of legislative or judicial decisions, will sanction a violation of the fundamental law, clearly expressed or necessarily understood, (*Pierce* v. *Drew*, 136 Mass., 79) if the words of the constitutional provision could be deemed ambiguous, their interpretation must be held to be settled by the contemporaneous construction, and the long course of practice in accordance therewith. *Com.* v. *Lockwood*, 109 Mass., 339.

In *Com.* v. *Parker*, 2 Pick., 550, decided in 1824, the contention here urged, that "vicinity" is used as synonymous with "county," was urged against the St. 1795, Chap. 45, Sec. 1, and was overruled; that

statute was adopted in Laws of 1821, Chap. 59, Sec. 40, and is found in substantially the same form in R. S., 1916, Chap. 133, Sec. 2.

When we consider the vast extent of forest lands in this State where violations of the inland fish and game laws frequently occur, it is clear that the provision of law here in question does not operate as a hardship upon the accused, but in many cases to his benefit and for his convenience, obviating travel for long distances, with the attendant increased expense of witnesses, and securing trial in the vicinity or neighborhood of the alleged crime; thus the reason underlying the practice at common law is promoted.

The entry will be,

> *Exceptions overruled.*
> *Respondent may plead anew in*
> *accordance with the leave granted.*